

*Veneri Law Offices*

ATTORNEYS AT LAW
1600 W. MAIN STREET
PRINCETON, WV 24740

(304) 425-8751
FAX (304) 487-2830

**FILED**

JAN 04 2017

RANDALL L. VENERI
ANTHONY "TONY" VENERILL
CLERK CIRCUIT COURT
MERCER COUNTY

January 4, 2017

17-C-2 -MW

**VIA HAND DELIVERY**

Julie Ball, Clerk
Circuit Court of Mercer County
1501 W. Main Street, Suite 111
Princeton, WV  24740

RE: Kenneth E. Chittum, Individually and Kenneth E. Chittum as Administrator of
the Estate of Theresa Chittum v. Branch Banking and Trust Company (BB&T),
FV-I, Inc.; FV-I, Inc. In Trust for Morgan Stanley Mortgage Capital Holdings, LLC;
Morgan Stanley Mortgage Capital Holdings LLC;  Seneca Trustees, Inc., and
Specialized Loan Servicing LLC,

Dear Ms. Ball:

Please file the Civil Case Information Sheet, Complaint, Motion for Injunction, Notice of
Hearing, and six (6) Summons', along with three (3) copies of each. Also enclosed you will find
my firm's check number 12476 in the amount of $200.00 for the filing fee.

Thank you for your assistance in this matter.

Sincerely yours,

Anthony R. Veneri

ARV:ljh

Enclosures

cc:    Kenneth Chittum



EXHIBIT
A



FILED

JAN 0 4 2017

JULIE BALL
CLERK CIRCUIT COURT
MERCER COUNTY

CIVIL CASE INFORMATION STATEMENT
CIVIL CASES

## IN THE CIRCUIT COURT OF MERCER COUNTY, WEST VIRGINIA

I.    CASE STYLE:          CIVIL ACTION NO. 17-C-2

Plaintiff(s)

Kenneth E. Chittum, Individually and
Kenneth E. Chittum As Administrator of
The Estate of Theresa Chittum

Judge Wills

VS.

| Defendant(s) | Days to Answer | Type of Service |
|---|---|---|
| Branch Banking and Trust Company (BB&T), FV-I, Inc., FV-I, Inc. In Trust for Morgan Stanley Mortgage Capital Holdings, LLC, Morgan Stanley Mortgage Capital Holdings, LLC, Seneca Trustees, Inc., and Specialized Loan Servicing, LLC | 30 | Personal Service |

Original and 3 copies of the Complaint are enclosed.

PLAINTIFFS: KENNETH E. CHITTUM, INDIVIDUALLY AND KENNETH E. CHITTUM AS ADMINISTRATOR OF THE ESTATE OF THERESA CHITTUM

CIVIL ACTION NUMBER:

DEFENDANTS: BRANCH BANKING AND TRUST COMPANY (BB&T), FV-I, INC., FV-I, INC. IN TRUST FOR MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS, LLC, MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS, LLC, SENECA TRUSTEES, INC., AND SPECIALIZED LOAN SERVICING, LLC

**II.     TYPE OF CASE:**

| | | |
|---|---|---|
| ☐ Professional Malpractice | ☐ Real Property | ☐ Miscellaneous |
| ☐ Personal Injury | ☐ Other Tort | ☐ Appeal of Administrative Agency |
| ☐ Products Liability | ☐ OTHER: Infant Settlement | ☐ Estate Case |
| ☐ Mental Health | ☐ Petition for Modification of Magistrate Sentence | ☐ Wrongful Death |

**III.     JURY DEMAND:** ☒ Yes  ☐  No

          **CASE WILL BE READY FOR TRIAL BY** (MONTH/YEAR) _unknown_____

**IV.     DO YOU OR ANY OF YOUR CLIENTS OR WITNESSES IN THIS CASE REQUIRE SPECIAL ACCOMMODATIONS DUE TO A DISABILITY OR AGE? IF YES, PLEASE SPECIFY:**

          ☐ Wheelchair accessible hearing room and other facility

          ☐ Interpreter or other auxiliary aid for the hearing impaired

          ☐ Reader or other auxiliary aid for the visually impaired

          ☐ Spokesperson or other auxiliary aid for the visually impaired

Attorney name: ANTHONY R. VENERI          Representing:
Firm:          VENERI LAW OFFICES          ☒ PLAINTIFF
Address:       1600 W. Main Street
               Princeton, WV  24740          ☐ DEFENDANT

DATED:  December 30, 2016

                                        ANTHONY R. VENERI, Esq.

IN THE CIRCUIT COURT OF MERCER COUNTY, WEST VIRGINIA

```
                                                    ┌─────────────────────────┐
                                                    │    F I L E D             │
                                                    │                          │
                                                    │    JAN 0 4 2017          │
                                                    │                          │
                                                    │    JULIE BALL            │
                                                    │    CLERK CIRCUIT COURT   │
                                                    │    MERCER COUNTY         │
                                                    └─────────────────────────┘
```

KENNETH E. CHITTUM, Individually and
KENNETH E. CHITTUM as Administrator
Of the Estate of THERESA CHITTUM                                  PLAINTIFFS,

V.                            CIVIL ACTION NO: 17-C-2-mw

BRANCH BANKING AND TRUST
COMPANY (BB&T); FV-I, INC.; FV-I, INC.
IN TRUST FOR MORGAN STANLEY
MORTGAGE CAPITAL HOLDINGS, LLC;
MORGAN STANLEY MORTGAGE CAPITAL
HOLDINGS LLC;  SENECA TRUSTEES, INC.,
and SPECIALIZED LOAN SERVICING LLC,                               DEFENDANTS.

# COMPLAINT

Come now the Plaintiffs to allege as follows:

1.      Plaintiff, Kenneth E. Chittum is a citizen and resident of Mercer County, West Virginia and he is also the duly appointed fiduciary (administrator) of the Estate of Theresa Chittum, his deceased wife, who died a resident of Mercer County, West Virginia;

2.      Defendant FV-I, Inc. is a corporation foreign to the State of West Virginia which does business in the State of West Virginia;

3.      Defendant Morgan Stanley Mortgage Capital Holdings LLC is an entity foreign to the State of West Virginia, which does business in the State of West Virginia;

4.      Branch Bank and Trust Company is an entity foreign to the State of West Virginia which does business in the State of West Virginia;

5.      Defendant Seneca Trustees, Inc., is a West Virginia corporation which does business in the State of West Virginia;

6.      Defendant Specialized Loan Servicing LLC is an entity foreign to the State of West Virginia which does business in the State of West Virginia;

1

7.     Throughout this complaint, Plaintiff Kenneth E. Chittum, individually, and acting as Administrator of the Estate of Theresa Chittum, shall be referred to as "Chittum" unless otherwise indicated;  furthermore, Defendant, FV-I, Inc. shall be referred to herein this complaint as "FV-I;"  Defendant Morgan Stanley Mortgage Capital Holdings LLC shall be referred to herein this complaint as "Morgan Stanley;"  Defendant, Branch Banking and Trust Company shall be referred to herein this complaint as "BB&T;" Defendant Seneca Trustees, Inc. shall be referred to herein this complaint as "Seneca;" and  Defendant Specialized Loan Servicing LLC shall be referred to herein this complaint as "SLS;"

**GENERAL FACTS**

8.     On or about December 21, 1988, Chittum and his wife purchased real estate from Mary E. Goodall pursuant to a Deed recorded in the Office of the Clerk of the Mercer County Commission, Mercer County, West Virginia, in Deed Book No. 684, page 786, and they held that property as joint tenants with the right of survivorship.  Upon the death of Theresa Chittum, Plaintiff Kenneth Chittum became vested with the exclusive title and ownership of the subject real estate, subject to the loan and lien below;

9.     On or about January 26, 1996, Kenneth Chittum and his wife Theresa Chittum borrowed money (hereinafter referred to as "first loan") from One Valley Bank of Mercer County, Inc. in the amount of approximately One Hundred, Twenty-Six Thousand, Five Hundred and No/100 Dollars ($126,500.00) by signing a Promissory Note, signing a Deed of Trust, and signing other documents required for the closing of the transaction.  The subject Deed of Trust was dated January 26, 1996 and was recorded in Trust Deed Book 748, at page 638, in the Office of the Clerk of the Mercer County Commission, Mercer County, West Virginia, and said Deed of Trust is attached hereto as Exhibit A, and is incorporated into this complaint as if the same were

2

fully set forth herein. The subject Deed of Trust utilized the real estate purchased in December, 1988 from Mary E. Goodall as collateral and the same is referred to in the description to said Deed of Trust attached as Exhibit A;

10.     Subsequent to the first loan and the recording of the Deed of Trust attached as Exhibit A, Kenneth Chittum and his wife made payments towards satisfying the loan for several years;

11.     At some point in time after the subject loan referred to above, One Valley Bank of Mercer County, Inc. was merged into BB&T, and BB&T has operated in Mercer County, West Virginia since the merger. BB&T was assigned, or otherwise assumed ownership and control of, the subject first loan referred to above;

12.     At some point in time after January, 1996, Kenneth Chittum borrowed monies from BB&T for a separate loan (hereinafter referred to as the "second loan") not connected with or related to the first loan referred to in paragraph 9 above. Said second loan was not secured by the properties purchased by Chittum and his wife form Goodall in 1988;

13.     After years of payments towards the second loan, Chittum and BB&T communicated and agreed that Chittum was no longer required to make payments on the second loan and that the second loan was "charged off," and Chittum was advised that the second loan was charged off by BB&T, and he relied on that representation;

14.     After the second loan was charged off as referred to in the preceding paragraph, BB&T wrongfully, improperly, willfully or negligently, and in violation of West Virginia law and contrary to BB&T's representations and agreement, did apply payments made by Chittum for the first loan to the second loan, thus causing the first loan to appear delinquent or otherwise appear to be in default when it was not in default;

3

15.     By virtue of the conduct alleged in paragraph 14, BB&T made demands of Chittum and his wife to cure or reduce the purported delinquency and default, and did exert authority, pressure, intimidation, or threats to cause the sale of the subject real estate under the terms of the Deed of Trust attached as exhibit A;

16.     Upon discovering that the first loan had not received credit for the payments made by Chittum (which were erroneously and negligently applied to the loan that had been written off), Chittum communicated with BB&T, and BB&T advised Chittum that the subject payments had been wrongfully applied or misapplied to the second loan which was charged off, and that BB&T would correct the misapplication of the payments, thus greatly reducing the sums owed to BB&T pursuant to the first loan;

17.     In addition to the above, BB&T wrongfully purchased insurance for the subject properties and added the purchases to the total due and owing when Chittum had already purchased insurance for the properties. The conduct of BB&T caused the monthly payments for the first loan to increase when they should not have increased;  in effect, Chittum had two policies of insurance covering the properties, and BB&T added the purchase of insurance to the balance owed to wrongfully increase that balance and therefore cause a larger balance due for purposes of any default. Although Chittum objected to the purchase of insurance and declined to pay for the same, BB&T continued to add the insurance purchases into the balance owed, which caused or contributed to the default in payments claimed by BB&T, and an excessive balance owed, all to the prejudice of Chittum;

18.     Notwithstanding the promises and representations of BB&T as referred to in paragraph 16 above, and notwithstanding Chittum's purchase of insurance and objection to BB&T purchasing the same, BB&T failed to properly correct and adjust the first loan balance.

4

Instead, BB&T declared that the subject first loan was delinquent or in default, and directed SLS to communicate by mail and/or telephone to Chittum that the first loan was delinquent or in default, and that the balance due (which was excessive and inflated) had to be cured, when in reality, the loan balance should have been much lower, if not extinguished;

19.     On or about February 4, 2016, more than twenty years after the original first loan and Deed of Trust attached as exhibit A, BB&T, acting by Morgan Stanley as its attorney-in-fact, did assign and transfer to FV-I, in trust for Morgan Stanley, the mortgage and Deed of Trust attached hereto as Exhibit A by a document entitled "Assignment of Mortgage" which was recorded in the Book of Assignments, Book 26, page 119, recorded in the Office of the Clerk of the Mercer County Commission, Mercer County, West Virginia. Said Assignment of Mortgage from BB&T to FV-I/Morgan Stanley is attached hereto this complaint as Exhibit B and the same is incorporated herein as if fully set forth;

20.     Subsequent to the assignment of the mortgage, FV-I, Morgan Stanley, SLS, and/or others, continued to communicate to Chittum that the first loan was delinquent or in default, and maintained that a sum exceeding Thirty Thousand and No/00 Dollars ($30,000.00) was due on the subject first loan when in fact a sum far less was due and owing on that first loan;

21.     On or about May 26, 2016, FV-I in trust for Morgan Stanley substituted trustees on the Deed of Trust attached as exhibit A, and appointed Seneca to be the substitute trustee/grantee pursuant to the terms of that Deed of Trust. The substitution of trustee was accomplished by a document entitled "Appointment of Substitute Trustee" and was signed by SLS as the attorney-in-fact for FV-I in trust for Morgan Stanley. The "Appointment of Substitute Trustee" was recorded on June 8, 2016, recorded in the Office of the Clerk of the Mercer County Commission, Mercer County, West Virginia, and a duplicate of the same is

5

attached hereto this complaint as Exhibit C, and said document is incorporated herein this complaint by reference as if the same were fully set forth herein;

22.     At no time before or at the time of the recording of the "Assignment of Mortgage" attached hereto as Exhibit B, and at no time before or at the time of the recording of the "Appointment of Substitute Trustee" attached hereto as Exhibit C, did either attorney-in-fact, or anyone, cause to be recorded, or record, the power of attorney granting each attorney-in-fact the authority to sign and execute, and ultimately record, the Assignment of Mortgage and the Appointment of Substitute Trustee.  The failure of FV-I, Morgan Stanley, Seneca, and SLS to record each power of attorney constitutes violations of West Virginia Code 39B-2-104(b);

23.     After the appointment of the substitute trustee and the recording thereof on or about June 8, 2016, Seneca issued a notice of trustee's sale of the subject real estate referred to on exhibit A.  Seneca then caused a trustee's sale to occur where the subject real estate was ultimately sold to FV-I on July 26, 2016, for a sum far less than the fair market value of the property.  The Deed from Defendant Seneca to Defendant FV-I is attached hereto as Exhibit D and the same is incorporated by reference as if fully set forth herein.  The report of the trustee sale is attached hereto this complaint as Exhibit E and the same is incorporated by reference as if the same were fully set forth herein.  As can be seen from the Deed (Exhibit D), that real estate was sold by Seneca to FV-I for only Thirty-five Thousand, Eight Hundred Ninety-three and 21/100 ($35,893.21), when it was worth more than One Hundred Thousand and No/100 Dollars ($100,000.00);  from the sales proceeds at the trustee's sale ($35,893.21), Thirty-four Thousand, One Hundred Thirty-two and 32/100 Dollars ($34,132.32) was applied to satisfy the incorrect and inflated first loan balance, and this act by Seneca, FV-I, and Morgan Stanley greatly prejudiced the equity, ownership, and rights of Chittum;

6

24.     During the months of June, July, and August, 2016, Chittum experienced substantial and severe health problems and his ability to ambulate, work, and perform other functions was to some extent impaired;

25.     On or about September, 2014, BB&T filed a civil action in the Circuit Court of Mercer County, West Virginia to quiet the title and correct the legal description to the subject property which is the collateral described in the Deed of Trust attached as Exhibit A.  Said complaint was assigned Case No. 14-C-527-WS, and was ultimately assigned to retired circuit judge, John Hrko.  Upon information and belief, BB&T dismissed said case on or about January 7, 2016, and the joint stipulation of dismissal is attached hereto this complaint as Exhibit F and the same is incorporated by reference as if fully set forth herein.  The stipulation of dismissal was less than thirty (30) days prior to the assignment of the subject mortgage and Deed of Trust by BB&T to FV-I in trust for Morgan Stanley.  The complaint filed by BB&T in the Circuit Court of Mercer County was actually called a "Petition to Quiet Title and Correct the Legal Description" and said document is attached hereto this complaint as Exhibit G and the same is incorporated herein by reference as if fully set forth herein.  The docket sheet for said civil action (14-C-527) is likewise attached hereto this complaint as Exhibit H and the same is incorporated by reference as if fully set forth herein.  At no time was the title "quieted" or corrected, and therefore, FV-I, Morgan Stanley, Seneca, and SLS either acted, or may have acted, as described above with an incorrect description or title;

26.     On or about September 8, 2016, FV-I in trust for Morgan Stanley did file a complaint for unlawful detainer in the Magistrate Court of Mercer County, West Virginia against Chittum and all occupants of the subject properties.  A duplicate of said complaint and Chittum's

original answer thereto is attached to this complaint as Exhibit I and J respectively, and the same are incorporated herein by reference as if fully set forth herein;

27.     Upon information and belief, the subject Magistrate Court case was removed to the Circuit Court of Mercer County, West Virginia, and is scheduled for a hearing on January 23, 2017, at which time FV-I will attempt to eject Chittum and his guests or invitees from the subject properties.

## COUNT I

28.     Chittum incorporates paragraphs 1 through 27 in this complaint as if the same were fully set forth herein;

29.     BB&T, FV-I, Morgan Stanley, SLS, and Seneca have acted in concert with each other, or others, to wrongfully cause the sale of the subject properties identified in the Deed of Trust attached as Exhibit A;  one or more of said defendants wrongfully calculated the first loan balance, and thereafter, misrepresented the first loan balance to Chittum in correspondence, notices, trustee's sale, or other documents, and directed Chittum to pay an incorrect or overstated loan balance, or else he would forfeit his ownership in the subject property, all of which operated to the significant prejudice of Chittum.  BB&T, and therefore FV-I as the assignee in trust for Morgan Stanley, wrongfully applied first loan payments and wrongfully caused an increase in the amount or duration of first loan payments, and this conduct substantially and wrongfully inflated the loan balance purportedly owed by Chittum for said first loan.  The above mishandling of the subject loan and the miscalculation of the first loan balance violated West Virginia law, including, but not limited to, real estate and consumer credit protection law, to the detriment of Chittum and caused the first loan to be placed into delinquency and/or default under erroneous terms and conditions;

8

30.    BB&T did represent, promise, and agree to/with Chittum that it would correct the misapplication of payments, and apply same to the first loan which would substantially or materially reduce and correct the balance of the first loan.   In reliance upon those representations, promises, and agreement, Chittum did continue to make payments and did not take action to correct the loan balance believing that the balance had been corrected and that the first loan would be satisfied timely.   However, BB&T did not correctly apply the payments made by or on behalf of the Plaintiff, and did not correct the balance due under the first loan.   As a result of this conduct, and the above misrepresentations, breach of promise, and breach of agreement by BB&T, the defendants, separately or jointly, wrongfully declared the first loan to be delinquent and in default for an erroneous balance, and did therefore, wrongfully cause an overstatement of the sums due to BB&T and the trustee's sale of the subject property for the first loan, all to the prejudice of Chittum;

31.    The misconduct of BB&T associated with the first loan and Deed of Trust (attached as exhibit A) is imputed to Defendant FV-I in trust for Morgan Stanley because the first loan and Deed of Trust were assigned by BB&T to FV-I in trust for Morgan Stanley;

32.    The Defendant have acted in a civil conspiracy to intentionally or negligently violate the law of the State of West Virginia, and to wrongfully take the property of Chittum;

33.    Chittum has suffered a loss of his property, a loss of equity in his assets, annoyance, aggravation, inconvenience, attorney's fees, and expenses of litigation due to the misconduct and violation of law of the Defendants alleged herein.   The misconduct and losses further warrant equitable relief, including an injunction or restraining order prohibiting the sale or transfer of the subject property pending the proceedings herein; further damage and loss will be prevented if the court enjoins the further sale, transfer, or disposition of the subject property.

WHEREFORE, the Plaintiff prays that he be granted judgment against the Defendants, jointly and severally for a sum sufficient to compensate him for his losses and injuries, and that the Court enjoin the further sale, transfer, or disposition of the subject real estate by Defendant FV-I in trust for Defendant Morgan Stanley pending further proceedings in this case. The Plaintiff further requests that he be awarded his attorney's fees and costs and any such other relief favoring the Plaintiff that the court deems just and proper.

## COUNT II

34.    Chittum incorporates paragraphs 1 through 33 in this complaint as if the same were fully set forth herein;

35.    The Assignment of Mortgage from BB&T to FV-I/Morgan Stanley by BB&T, acting by Morgan Stanley as its attorney-in-fact, was ineffective and void because the power of attorney establishing Morgan Stanley as the attorney-in-fact for BB&T was not recorded with the Assignment of Mortgage as required by law;

36.    The appointment of Seneca as the substitute trustee by SLS as attorney-in-fact for FV-I in trust for Morgan Stanley was ineffective and void because the power of attorney establishing SLS as the attorney-in-fact for FV-I in trust for Morgan Stanley was not recorded with the appointment of substitute trustee as required by law;

37.    Seneca knew, or should have known, of the facts alleged in paragraphs 35 and 36 above, and in any event, knowledge of those facts is imputed to Seneca be operation of law, including, but not limited to, the doctrine of agency;

38.    As a result of the violations of the law referred to above, the subject trustee's sale conducted by Seneca is void, or voidable, and was inequitable to Chittum;

10

39.     The Court should impose a constructive trust upon the legal and equitable title to the subject real estate to correct the wrongs, misrepresentations, breach of duties, violations of the law, and breach of promises alleged herein this complaint because a failure to do so will result in irreparable harm and loss to Chittum;

40.     The court should enjoin the further sale, transfer, disposition, or alienation of the subject real estate because a failure to do so will result in irreparable harm and loss to Chittum;

41.     Chittum has suffered, or will suffer, a loss of property, equity in his assets, annoyance, aggravation, inconvenience, attorney's fees, and expenses of litigation due to the misconduct and violation of law of the Defendants alleged herein.

WHEREFORE, the Plaintiff prays that the Court enter judgment against the Defendants, jointly and severally, for a sum sufficient to compensate him for the losses arising out of those allegations alleged in Count II above, and that the Court declare a constructive trust, and vacate or void the sale of the subject properties at the trustee's sale on July 26, 2016.  The Plaintiff further requests the Court to enjoin the further sale, transfer, disposition, or alienation of the subject real estate because a failure to do so will result in irreparable harm and loss to Chittum. The Plaintiff further requests the Court to award him his attorney's fees, expenses of litigation, costs and any such other relief favoring the Plaintiff, and saving his properties from sale and transfer, that the court deems just and proper under the circumstances.

### COUNT III

42.     Chittum incorporates paragraphs 1 through 41 in this complaint as if the same were fully set forth herein;

43.     As previously alleged by BB&T, the description of all or a portion of the subject property may be erroneous;

11

44.    The trustee's sale was conducted by misrepresenting the description of the property that BB&T thought needed correcting before the mortgage was assigned;

45.    The trustee's sale should be vacated, the description corrected, and the parties restored to their positions before the notice of sale was issued and the sale conducted.

WHEREFORE, the Plaintiff prays that the Court vacate the trustee's sale, correct the description of the property, restore the parties to their prior positions, and provide the relief requested in Count I and Count II above.

## COUNT IV

46.    Chittum incorporates paragraphs 1 through 45 in this complaint as if the same were fully set forth herein;

47.    The conduct of the Defendant, and each of them individually, was egregious, with malice, and willful enough for the Court to award punitive damages or other sanctions against said Defendants as allowed by West Virginia law. Upon information and belief, each Defendant has sufficient wealth to warrant an award of punitive damages, and the misconduct was egregious enough so that there is a need to deter further such misconduct by said Defendants or others. An award of punitive damages meets the standards imposed by the United States Constitution, the West Virginia Constitution, legal doctrine of the United States Supreme Court, and legal doctrine of the West Virginia Supreme Court of Appeals.

WHEREFORE, Plaintiff prays that he be awarded a judgment for punitive damages or other sanctions against the Defendant, jointly or severally, in an amount sufficient to punish said Defendant for their misconduct. The Plaintiff further requests any such other relief favoring him and retention of his properties that the court deems just and proper under the circumstances.

12

Kenneth E. Chittum, individually and as
Administrator of the Estate of Theresa Chittum,

By Counsel

Of Counsel for the Plaintiffs

Anthony R. Veneri
Veneri Law Office
1600 W. Main Street
Princeton, West Virginia 24740
(304) 425-8751
WV State Bar #4310/oc

13

BOOK PAGE

Cross Reference

SUBTS 1211-197
AS 26-119
AS 26-162
SUBTS 1317-694
TTS 38-467

FILED

JAN 0 4 2017

JULIE BALL
CLERK CIRCUIT COURT
MERCER COUNTY

BOOK 748 PAGE 638

---[Space Above This Line For Recording Data]---

# DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on this 26th day of January, 1996,
The grantor is    Kenneth E. Chittum and Theresa M. Chittum, married

("Borrower"), and whose mailing address is

Rt. 9 Box 32A, Princeton, WV  24740

. The trustee is

John G. Bowling and Dewey W. Russell

whose residence address is

1439 Main Street, P. O. Box 5610, Princeton, WV  24740

Mercer                           County, West Virginia ("Trustee"). The beneficiary is
One Valley Bank of Mercer Co., Inc.
which is organized and existing under the laws of   the State of West Virginia     , and whose address is
1439 Main Street, P. O. Box 5610, Princeton, WV  24740

("Lender"). Borrower owes Lender the principal sum of
One hundred twenth six thousand five hundred and no/100----------
Dollars (U.S. $  126,500.00         ). This debt is evidenced by Borrower's note dated the same date as this Security
Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on
February 1, 2016,          . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced
by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with
interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of
Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably
grants and conveys to Trustee, in trust, with power of sale, the following described property located in
Mercer                                                                      County, West Virginia:

SEE ATTACHED LEGAL DESCRIPTION

which has the address of  Rt. 9 box 32A    Off Pisgah Road                    Princeton
                                             [Street]                                    [City]

West Virginia        24740              ("Property Address");
                     [Zip Code]

WEST VIRGINIA -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3049 9/90

ITEM 1986 (9308)                        (Page 1 of 6 pages)          Great Lakes Business Forms, Inc.
                                                                     To Order Call: 1-800-530-9393 □ Fax 616-791-1131

BOOK 748 PAGE 639

EXHIBIT A  --  KENNETH E. CHITTUM and THERESA CHITTUM

FIRST:

"all of that certain tract or parcel of land in East River
District, Mercer County, West Virginia, shown upon a map entitled
'Plat of Survey for Mary E. Goodall, Being a parcel of land in
East River District, Mercer County, West Virginia as described
in Deed Book 364 pg 214 as Lots 1, 2, 7, 8 and a part of 9, also
the 3.5 Ac tract of 'Bailey Home Sites', a subdivision of C.
J. Lilly of Hinton, W. Va. in 1953 and recorded as microplat
#3100, shown as parcel #3 on Tax Map East River #18. Deducted
from the above lands is the land deeded to the West Virginia
Department of Highways, 7/22/74, by deed 512/484 - State Road
Project I-77-2(13)9 Parcel #22 - Route 19-21 Scale 1" = 50',
dated 12/9/88, George A. Morton, P.E., P.O. Box 908, Princeton,
W.Va.  24740, a copy of which is attached hereto, which is more
particularly bounded and described as follows:"

BEGINNING at an iron pin set in the East line of a
private road to the Bailey Home Sites and in the South
line of Pisgah Road and being the N. W. corner of Lot
#3 of said subdivision; Thence S 32° 25' W. 280' to
an iron rod set at a fence post common corner to Lots
3 and 7; Thence South 79° 26' E along the fence line
between Lots 3 and 7 200' to an iron rod set at the
fence corner, common corner to Lots 3, 4 and 7; Thence
S 16° 00' W along the Lillian Cooper line 150.00' to
an iron rod; Thence S 06° 09' W along a line of old
fence posts with no fence wire 77.70' to an iron set at
a fence corner; Thence S 88° 04' E along a fence line
of Lillian Cooper 385.43' to an iron rod set at a
fence corner in the line of Thomas Gooch; Thence S
4° 44' E along the Thomas Gooch fence line 644.33' to
a 2" iron pipe corner set in the North R/W fence of
the West Virginia Highway department I-77, station
118+85 NBL 157' Rt.; Thence North westwardly with the
fence 332'-, 825'- and 510'- to an iron rod set 1'
North of the R/W Fence; Thence N 20° 40' E 214'- to

BOOK 748 PAGE 640

BOOK 748 PAGE 640

Clerk of the County Commission of Mercer County, West Virginia, in Deed Book 684 at Page 786.

"This conveyance is made subject to and the party of the first part hereby conveys for the consideration aforesaid, all of her right, title and interest under that certain oil and gas lease executed by G. H. Bailey and Stella Bailey to United Fuel Gas Company, July 11, 1951, and recorded in said Clerk's Office in Oil and Gas Lease Book No. 4, at Page 276, insofar as said lease affects or pertains to the land above described."

"This conveyance is made subject to all pipe line easements, power line easements and all other rights and easements heretofore granted by the party of the first part and her predecessors in title."


SECOND:

"all of that certain tract or parcel of real estate situate in East River District, Mercer county, West Virginia, designated as Lot No. 3, on a Map entitled 'Bailey Home Sites, Part of G. H. Bailey Farm, Scale: 160 ft. to the inch, Survey, 1953, by C. J. Lilly, Hinton, W. Va.,' of record in the Office of the Clerk of the County Commission of Mercer County, West Virginia, as Microfilm Plat Record No. 3100, and more particularly bounded and described as follows:"

Said Lot fronts 132 feet on the south side of Pisgah Road and extends back on the west with the east line of the private road leading into the G. H. Bailey home tract 280 feet, and extends back on the east with the west line of Lot No. 4, 262 feet, being 200 feet on the rear, containing 1.1 acre, more or less.

And being the same real estate conveyed unto Kenneth E. Chittum and Theresa Chittum by Deed from Gilbert E. Bailey, Ronald L. Bailey and Virginia A. Bailey O'Quinn, dated the 4th day of May, 1994, of record in the Office of the Clerk of the County Commission of Mercer County, West Virginia, in Deed Book 745 at Page 358.

BOOK 748 PAGE 641

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing

BOOK 748 PAGE 642

periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any

BOOK 748 PAGE 643

condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in

BOOK 748 PAGE 644

applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall give Borrower, in the manner provided in paragraph 14, notice of Lender's election to sell the Property. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law and, when required by applicable law, shall cause such notice to be served personally upon Borrower or other persons. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**22. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**23. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

*(Page 5 of 6 pages)*                                        Form 3049 9/90

BOOK 748 PAGE 645

**24. Beneficiary's Address.** The beneficial owner and holder of the Note at the time of execution and delivery hereof is Lender, whose residence address is stated in the first paragraph of the first page of this Security Instrument.

**25. Attorney's Fees.** The provisions in this Security Instrument for Borrower to pay "attorneys' fees" shall be void.

**26. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] 1-4 Family Rider |
| [ ] Graduated Payment Rider | [ ] Planned Unit Development Rider | [ ] Biweekly Payment Rider |
| [ ] Balloon Rider | [ ] Rate Improvement Rider | [ ] Second Home Rider |
| [X] Other(s) [specify]   Amendment of Deed of Trust | | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 6 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witness:                                        Witness:

_Kenneth E. Chittum_ (Seal)          _Theresa M. Chittum_ (Seal)
Kenneth E. Chittum   -Borrower          Theresa M. Chittum   -Borrower

_____ (Seal)          _____ (Seal)
-Borrower                                       -Borrower

_____ (Seal)          _____ (Seal)
-Borrower                                       -Borrower

STATE OF WEST VIRGINIA,          Mercer                    County ss:

The foregoing instrument was acknowledged before me this 26th day of January, 1996,
(date)

by      Kenneth E. Chittum and Theresa M. Chittum
(person acknowledging)

My Commission expires: 5-10-99

_Rebecca J. Graham_
Notary Public

Book Page 748-646

BOOK 748 PAGE 646

## AMENDMENT TO DEED OF TRUST

The undersigned Borrower hereby agrees that the foregoing and attached deed of trust dated the 26th day of January , 19 96 , shall be amended as follows:

A.   There shall be no fund created for taxes and insurance as required by Paragraph 2 and such paragraph is hereby deleted from the deed of trust.

B.   Borrower shall not be required to use the secured property as a principal residence within 60 days of execution of the deed of trust nor shall Borrower be required to occupy such property as a principal residence for one year after the date of occupancy as required in Paragraph 6.

C.  Borrower shall not have the right to reinstate as set forth in Paragraph 18 if Borrower has been in default three or more times and has received notice of right to cure three or more times.  In the event notice of right to cure default has been given to Borrower three or more times, then Lender may proceed to enforce foreclosure under the terms of the deed of trust.

D.  In the event of acceleration under Paragraph 21, the notice of acceleration shall only be required to contain such language as is required by law.

E.   Paragraph 25 shall be amended to provide that attorney's fees may be charged and collected as are permitted by law.

WITNESS the following signatures as of the day and year first above written.

AMENDWVA